(Reap. Dec. 10594)

PRINTING INDUSTRIES EQUIPMENT, INC. v. UNITED STATES

Entry No. 908847.

(Decided October 7, 1963)

*Barnes, Richardson, & Colburn* (*Hadley S. King* and *Norman C. Schwartz* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

FORD, Judge. This appeal is directed against the appraisement of a machine, described on the invoice as "1 Cloth Cutter, serial No. 104," which was invoiced and entered at DM9774.35, equivalent to $1,980.50, less inland freight and f.o.b. charges. The merchandise was appraised at DM8880, plus the cost of packing, $48, as invoiced, on the basis of foreign value of similar merchandise, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

The importer contends that cost of production, as defined under section 402(f) of the Tariff Act of 1930, is the proper basis for appraisement.

The record herein consists of an affidavit of one Hermann Pieper, general sales manager of the exporter, received in evidence as plaintiff's collective exhibit 1; a Treasury Department report received in evidence as defendant's collective exhibit A; and a stipulation entered

into by and between counsel for the respective parties, which is as follows:

(1) That the merchandise here involved was appraised on the basis of foreign value, Section 402(c) of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938, of similar merchandise made by the same manufacturer.

(2) That if the Court should find and hold that the correct basis of appraisement herein is foreign value, the value returned by the appraiser is correct.

(3) That no export value and no United States value as those terms are respectively defined in Section 402(d) and 402(e) of said Tariff Act exists for such or similar merchandise.

(4) That similar merchandise was not produced by other manufacturers in the Federal Republic of Germany for home consumption or for exportation to the United States on or about the date of exportation of the merchandise involved herein.

Mr. Pieper, by way of plaintiff's collective exhibit 1, the affidavit, testified that he has been employed by the manufacturer, hereinafter referred to as "Kolbus," since 1930, and, since 1945, has been general sales manager; that, in the period from 1955, Kolbus manufactured various bookbinding machines, including the type involved herein; that, on August 1, 1955, Kolbus put out a pricelist for the domestic market in Germany, a copy of which was attached as exhibit A of plaintiff's collective exhibit 1, which list was valid until March 1, 1958; that Kolbus also issued a pricelist under similar date and effective until March 1, 1958, copy of which is marked exhibit B of plaintiff's collective 1, which is the "Ausland" or export price.

The witness testified that, prior to February 1956, the machines described in exhibit A of plaintiff's collective exhibit 1, were sold or offered for sale, as a rule, only directly to final consumers in Germany and were not sold to retailers or offered for resale; that, since February 24, 1956, so far as is pertinent herein, the involved machines were sold or offered for sale, as a rule, only to final consumers in Germany, with the exception of the territory of West Berlin where an exclusive arrangement was made with a large wholesaler for the purchase of these machines exclusively for resale in West Berlin; that, since 1952, sales to the United States have been limited to Printing Industries Equipment, Inc.; that, from 1955 to March 1, 1958, all export sales, with few exceptions, intended for the United States or other countries, were made at the prices indicated in exhibit B of plaintiff's collective exhibit 1, less 20 per centum discount; that a breakdown of the total sales for domestic consumption and for export for the years 1955 through 1957 was as follows:

|      | Germany | Export |
|------|---------|--------|
| 1955 | 30. 30% | 69. 70% |
| 1956 | 26. 19% | 73. 81% |
| 1957 | 31. 06% | 68. 94% |

The witness Peiper further testified that the export price includes packing, which amounts to about 1 per centum of the net amount of the invoice; that these prices further include all costs from the factory to f.o.b. German seaport; that the net export prices include cost of labor and material as well as overhead expenses, which constitute more than 10 per centum of the cost of labor and material; that, from 1955 through 1957, the net profit of Kolbus from export sales was:

1955_____ 4. 25%
1956_____ 5. 35%
1957_____ 6. 75%

The affiant further states that Kolbus is the sole manufacturer of bookbinding machines of its own design; that the handwritten notes on exhibit A of plaintiff's collective exhibit 1 represent minor changes in price for supplementary apparatus or for special machines, but these changes in no way refer to the basic prices of the different machines included in the pricelist, except for consecutive numbers 31 and 32, the prices of which were changed on August 7, 1957, for the domestic market.

Defendant's collective exhibit A, the Treasury Department report, indicates that merchandise sold for home consumption is identical to that exported to the United Sstates, with the exception that those machines sold in the home market are equipped with electric motors suited to the 50-cycle current used in Germany; that the manufacturer divides all purchasers into two classes: (a) Dealers in printing and allied machinery and (b) printers and bookbinders; that the merchandise is freely offered for sale to all, and there are no restrictions of any kind imposed by the manufacturer on the buyers of this merchandise; that discounts are granted from the pricelist not directly related to the quantity purchased but primarily depending on the status of the buyer; that dealers purchasing for resale usually receive a discount which is in the nature of a selling commission of 10 per centum; that this discount, however, is not fixed and may be as high as 15 per centum to some dealers and less than 10 per centum to others; that most sales to consumers are at list prices, net, but the status of the individual may entitle him to a discount of up to 10 per centum; that over 50 per centum of the manufacturer's sales are made to or through dealers; that discounts are often determined by a bargaining process; that a 3 per centum cash discount is granted occasionally but is not freely offered to all purchasers. A copy of the pricelist for domestic consumption under date of August 1, 1955, was attached to said report.

From the foregoing, it is apparent that the involved machine was appraised at DM8880, plus packing, as invoiced, as representing the foreign value of similar merchandise under section 402(c) of the Tariff Act of 1930, as amended, *supra*. Supporting this price is the

pricelist for home consumption attached to both the affidavit and the Treasury Department report, wherein item No. 31 sets forth the then current domestic price of DM8880.

In reappraisement proceedings, there is a statutory presumption that the value found by the appraiser is correct. The burden upon a party attacking an appraised value is twofold, i.e., to prove the action of the appraiser erroneous and to establish some other dutiable value as the proper one. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502.

The importer herein contends that it has established a *prima facie* case in that the affidavit received as plaintiff's collective exhibit 1 is sufficient to eliminate foreign value. In the affidavit, the affiant sets forth insofar as is pertinent herein, that machines such as are involved herein "were as a rule sold or offered for sale directly to final consumers in Germany with the exception of the territory of West Berlin where we made agreements to sell the said items No. 4 to 7 to a large wholesaler, but exclusively for resale in West Berlin." Based upon this statement, it is urged that sales for domestic consumption were restricted and, hence, were not freely offered to all purchasers. Defendant's collective exhibit A, dated October 3, 1955, indicates a free offering to all purchasers. However, since defendant's collective exhibit A was prepared prior to the February 24, 1956, date referred to in plaintiff's collective exhibit 1, it is apparent that a change of policy of the manufacturer resulted in a restricted market. Obviously, if sales to West Berlin were to an exclusive wholesaler, who was further restricted geographically to resales in West Berlin, said merchandise could not be considered to be freely offered to all purchasers.

It having been stipulated by counsel that no export or United States value exists for such or similar merchandise, the question arises as to whether the importer has met the second portion of its burden of proof, namely, establishing a proper value, in this instance, the cost of production.

Section 402(f) of the Tariff Act of 1930 provides as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3)   The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4)   An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

In the case of *Philipp Wirth et al.* v. *United States*, 23 CCPA 283, T.D. 48144, in construing the cost of production section of the Tariff Act of 1922, which is identical to section 402(f) involved herein, the following comments were made:

It will be observed that this section requires, in order to establish cost of production, the proof of four principal items which are numbered (1) to (4), inclusive. The appellate division was of opinion, and so held, that in order to establish the elements of cost of production found in said subsection (1), the cost of materials, fabrication, and manipulation must be broken down and itemized so that it might be ascertained, separately, how much the materials cost, how much was expended for labor, and any other items which might enter into the production costs mentioned in said subsection (1).

Counsel for the importer, in its brief, calculates the cost of production, as follows:

| | | |
|---|---|---:|
| (1) | Net export sales price ($2,565 less 20%) | $2, 052. 00 |
| (2) | Actual profit 5.35% on net export price | $    110. 08 |
| (3) | Packing as invoiced | $      48. 00 |
| (4) | Item (1) less items (2) and (3) equals cost of labor, material and general expense | $1, 893. 92 |
| (5) | 8% profit on item (4) | $    151. 51 |
| (6) | Add packing as invoiced | $      48. 00 |
| (7) | Sum of items (4), (5) and (6) equals cost of production | $2, 093. 43 |

An examination of the foregoing establishes that the net export sales price of $2,565 is the United States dollar price on the "Ausland" pricelist, exhibit B of plaintiff's collective exhibit 1, less the 20 per centum discount given on export sales, as indicated in paragraph 13 of the affidavit of plaintiff's collective exhibit 1. The actual profit of 5.35 per centum was obtained from paragraph 17 of the affidavit of plaintiff's collective exhibit 1, which indicates that, for the year 1956, said figure represents the actual profits. In a rather unorthodox manner, counsel for the importer, by subtracting the second and third items from the first, arrives at the figure of $1,893.92, as equivalent to the cost of labor, material, and general expenses. To this, the sum

of 8 per centum profit and the packing were added as equaling the cost of production. These calculations are not in accord with the decision in the *Wirth* case, *supra*. It is also to be noted that there is no showing in the affidavit that the profit ordinarily added by other manufacturers of merchandise of the same class or kind was less than the statutory minimum of 8 per centum.

The courts have on occasion permitted evidence of profit added by the manufacturer of the merchandise involved as sufficient in discharging the requirements of the statute when there is proof that, after due diligence on the part of the importer to ascertain the profit added by competing manufacturers to merchandise such as or similar to the imported merchandise or of the same class or kind, he was unable to obtain this information. *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407.

Accordingly, the importer has not overcome the statutory presumption of correctness, since it has failed to properly establish the cost of production, as required by section 402(f) of the Tariff Act of 1930.

Although the importer has met its first burden, it has failed to establish a *prime facie* case. From this, it is apparent that the appraisement on the basis of foreign value is erroneous. However, such value must stand. In *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593, the court made the following observation with respect to erroneous appraisements:

However erroneous the appraiser's action may have been in valuing the merchandise, it was incumbent upon appellant seeking to prove the correctness of a different statutory export value to meet every material issue in the case, and hence establish every element of that value in strict compliance with the dictates of section 402(d), *supra*. Failing to sustain this burden of proof, the value fixed by the appraiser remains in full force and effect.

On the record herein, I find as facts:

1. The merchandise consists of "1 Cloth Cutter, serial No. 104," which was exported from Germany on March 30, 1956.

2. On or about the date of exportation, such or similar merchandise was not freely offered for sale for export to the United States or freely offered for sale in the United States, pursuant to the provisions of section 402 (d) or (e) of the Tariff Act of 1930, or as amended by the Customs Administrative Act of 1938.

3. That, on or about the date of exportation, the sale of similar merchandise was restricted in the home market.

4. That the evidence with respect to cost of production does not meet the statutory requirements of section 402(f) of said act.

I conclude as a matter of law:

1. That the importer having failed to establish a value other than the appraised value of DM8880, plus $48, representing packing, said value must stand.

Judgment will be rendered accordingly.